IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| JIM WHITTUM | ) | Civil Action No: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| WALMART, INC., and | ) | |
| WAL-MART STORES EAST, LP. | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

COMES NOW Plaintiff, Jim Whittum, by and through his undersigned counsel, and files this his Complaint.

## PARTIES

1. Plaintiff is a United States citizen and resident of Jefferson, North Carolina.

2. Defendants are Delaware corporations, with their principal offices in Arkansas, and are licensed to do business in North Carolina.

3. Defendants at all times relevant to this Complaint, owned, operated and managed a retail store located at 1801 US Highway 421, Wilkesboro, North Carolina. The acts and omissions giving rise to this Complaint and causes of action occurred in North Carolina.

4. This Court has jurisdiction over the claims and causes of action raised in this Complaint pursuant to 28 U.S.C. §1331.

5. Venue is proper in this judicial district because Defendants have substantial business contacts in this district, and because the unlawful acts alleged herein occurred substantially in Wilkes County, Wilkesboro, North Carolina.

6. At all relevant times, Defendants were "employers" within the meaning of the Americans with Disabilities Act, 42 U.S.C §§ 12101 *et. seq.*

7. At all relevant times, Plaintiff was an "employee" within the meaning of the Americans with Disabilities Act, 42 U.S.C §§ 12101 *et. seq.*

## ADMINISTRATIVE PROCEDURES

8. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on September 26, 2016 (EEOC Charge No. 430-2016-02276).

9. In 2018, the EEOC issued a Determination in Charge 430-2016-02276 finding reasonable cause to believe Defendants had violated the Americans with Disabilities Act.

10. On September 27, 2018, Plaintiff was issued by the EEOC a Notice of Right to Sue against Defendants entitling him to commence an action under the Americans with Disabilities Act (hereinafter "ADA") within 90 days of receipt of that Notice. Plaintiff timely filed his Complaint against Defendants within 90 days of his receipt of the Notice of Right to Sue.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this matter.

## FACTUAL ALLEGATIONS

12. Plaintiff was first employed by Defendants in 1992. In 2016, Plaintiff was working for Defendants as a Co-manager (Shift Supervisor) at the Walmart Supercenter (Store #1290) located in Wilkesboro NC.

13. Throughout his employment, Plaintiff's job performance was satisfactory.

14. In October 2014, Plaintiff was diagnosed with a heart condition. After his diagnosis, Plaintiff requested and was placed on leave under the Family Medical Leave Act (hereinafter "FMLA") and was absent from work for 12 weeks.

15. Plaintiff returned to work on December 26, 2014 from his FMLA leave. Following his return from the FMLA leave, Plaintiff was only assigned to work on the day shift.

16. In January 2016, Plaintiff was told by his Store Manager, Mr. Steve Penland, that he was going to be rotated back to the night shift in 2016. In response, Plaintiff told Mr. Penland he could not work the night shift because of his heart condition. Plaintiff told Mr. Penland that the night shift assignment would have a negative impact on his heart condition. Plaintiff requested that Mr. Penland accommodate his heart condition and allow Plaintiff to continue to work on the day shift. Mr. Penland ignored Plaintiff's request and told Plaintiff he would be required to work the night shift.

17. In January 2016, Plaintiff also told Mr. Penland it was not his turn to move to the night shift. Instead, Mr. Charles "Allen" Erhardt was the Co-manager due to rotate to the night shift.

18. Following the notification and conversations with Mr. Penland, Plaintiff had conversations with his District Manager, Mr. Anthony Trent, regarding the move to

the night shift. Plaintiff told Mr. Trent that the night shift assignment would have a negative impact on his heart condition. Plaintiff requested that Mr. Trent accommodate his heart condition and allow Plaintiff to continue to work on the day shift. Mr. Trent told Plaintiff that Walmart could accommodate his request to remain on the day shift. Mr. Trent told Plaintiff to submit a doctor's note to verify he needed to avoid the night shift.

19. In February 2016, Plaintiff submitted a doctor's note which verified he could not work the night shift because it would be detrimental to his heart condition. Specifically, Plaintiff submitted a note dated February 10, 2016 from Dr. Gregory S. Hershner with Cornerstone Health Care which stated: "I have examined my patient Mr. Jim Whittum today and based on his medical conditions, it is my medical opinion that night shift work will be very detrimental to his health and recommend he does not work at nights." Plaintiff submitted this note to Market Human Resources Manager Teresa Tingler. Plaintiff gave the note to Ms. Tingler in a meeting in store #1290. During the meeting, Plaintiff told Ms. Tingler that the night shift assignment would have a negative impact on his heart condition and requested that he be allowed to continue to work on the day shift. Tingler told Plaintiff she would get back to him.

20. In February 2016, Plaintiff also spoke with Personnel Human Resources Coordinator Linda Annette Moretz and Assistant Market Human Resources Manager Hazel Burns regarding the fact the night shift assignment would have a negative impact on his heart condition and his request that he be allowed to continue to work on the day shift.

21. Following the submission of the note from Plaintiff's doctor, Defendants never responded to Plaintiff. Defendants employees did not contact Plaintiff, or follow up with Plaintiff, to discuss his request for reasonable accommodation. Defendants did not engage in any form of interactive process with Plaintiff. Defendants failed to conduct any individualized assessment to determine if Plaintiff could be scheduled to a position that did not require night shift work.

22. Between the submission of his doctors note in February 2016 and April 1, 2016, Plaintiff had periodic conversations with Penland. Plaintiff told Penland he had submitted his note to Human Resources. During these conversations, Plaintiff would ask Penland about the status of his request for an accommodation. Penland responded by telling Plaintiff he was waiting to hear back from Human Resources. Plaintiff also reiterated during these conversations that his heart condition would not allow him to work the night shift.

23. Between the submission of his doctors note in February 2016 and April 1, 2016, Plaintiff had periodic conversations with Trent. In these conversations, Plaintiff told Trent he was awaiting a response from Defendants Human Resource department; in response, Trent would assure Plaintiff a response was forthcoming. Plaintiff also reiterated during these conversations that his heart condition would not allow him to work the night shift.

24. Plaintiff was on vacation from April 2, 2016 until April 9, 2016. During his vacation, Plaintiff learned he was scheduled by Mr. Penland to begin working the night shift on April 9, 2016. Plaintiff reported to store #1290 on April 9, 2016 and had a conversation with Mr. Penland. As Plaintiff approached Mr. Penland, he was asked by Mr. Penland if he was there to "turn in his keys." Plaintiff responded "yes" because he had no choice, Walmart was forcing him to work the night shift in violation of the recommendation of his physician, and he could not work the night shift. Plaintiff was forced to leave his employment because the night shift would have a negative impact on his heart condition and could have fatal life-threatening consequences for Plaintiff.

25. Despite clearly seeking a reasonable accommodation, Defendants refused to engage in the interactive process.

26. Defendants have allowed other Co-managers to avoid working the night shift. Additionally, Plaintiff could have transferred to other stores who had Co-managers who were permanently assigned to the night shift which would have allowed Plaintiff to work the day shift. Moreover, Defendants did not offer reassignment to any vacant positions as a possible accommodation. These options/accommodations, nor any other form of accommodation were discussed with Plaintiff. Plaintiff's request for accommodation was ignored by Defendants.

27. In March 2016, Plaintiff applied for a vacant position as the Store Manager of the Walmart Neighborhood Market in Newton, North Carolina. Plaintiff was qualified for the position. The position would have allowed Plaintiff to avoid working the night shift. Plaintiff was never interviewed or considered for the position.

28. Plaintiff also identified a vacant management position in Boone, North Carolina that was opening up due to the retirement of the current manager as a possible accommodation to avoid the night shift. Plaintiff discussed this position and his interest in the position with Penland and Trent. Defendants did not respond or follow up with Plaintiff regarding this position or transferring Plaintiff into the position.

29. Throughout the time period Plaintiff reported to Penland, Penland would periodically question Plaintiff about his plans for retirement. Plaintiff had no plans to retire during this time period and he never raised the issue with any employee of Defendants. Plaintiff would respond to Penland he had no immediate plans for retirement. The uninvited questioning of Penland regarding retirement was very upsetting to Plaintiff.

30. Defendants actions have been willful, wanton and in reckless disregard of the rights of Plaintiff.

## COUNT I-VIOLATION OF THE ADA 42 U.S.C § 12101 *ET. SEQ.*

31. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

32. Plaintiff is a "person" and an "employee", and Defendants are an "employer" and "covered entity" as those terms are defined by 42 U.S.C. § 12111.

33. Plaintiff has a "disability" as that term is defined at 42 U.S.C. § 12102 in that he has physical impairment that limited one or more of his major life activities.

34. Defendants otherwise perceived Plaintiff as disabled at the time of his constructive discharge and in the time-period leading up to his constructive discharge.

35. Plaintiff's performance met and/or exceeded any reasonable expectations of Defendants for his role.

36. Plaintiff was qualified for his position and could perform the essential functions of his job at all relevant times, with or without a reasonable accommodation.

37. With the requested accommodation, Plaintiff would have been able to perform all of the essential functions of his job.

38. Plaintiff suffered an adverse employment action when the Defendants refused to engage in the interactive process and when the Defendants constructively discharged him from his employment on April 9, 2016.

39. By refusing to engage in the interactive process and ignoring Plaintiff's request for accommodation and forcing the Plaintiff to work the night shift despite the knowledge of the negative impact the night shift would have on Plaintiff's heart condition and possible life-threatening impact of the night shift work, Defendants made Plaintiff's work conditions and work environment intolerable. Plaintiff had no option but to leave his job. Moreover, Defendants intended for Plaintiff to resign as demonstrated by the behavior alleged in the preceding paragraphs and the intolerable working conditions which were created.

40. Defendants violated the ADA by (a) treating Plaintiff differently from his peers in the terms and conditions of his employment and ultimately constructively discharging him; and (b) failing to engage in the interactive process such that it then failed to accommodate his disability or perceived disability. Defendants committed a gross dereliction of its duty to engage in the interactive process with Plaintiff, resulting in a failure to accommodate.

41. As a direct and proximate result of Defendant's violation of Plaintiff's rights under ADA, Plaintiff has suffered, lost back pay and front pay, lost benefits and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, embarrassment, and humiliation as a result of the wrongful and illegal conduct.

42. Defendants actions and unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights. Defendants officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. Accordingly, Plaintiff is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

A. A judgement awarding Plaintiff reinstatement, lost wages, employment benefits, and any other compensation denied or lost to him;

B. Compensatory damages for the emotional distress he has suffered;

C. Punitive damages;

D. The costs of this action, including reasonable attorney's fees and costs;

E. Pre-judgment and post-judgement interest on all amounts for which pre-judgement and post-judgement interest is legally allowable;

F. All other relief whether legal, equitable or injunctive, as this Court deems just and necessary.

G. Plaintiff demands a jury trial in this action.

Respectfully submitted,

/s/ Jacob J. Modla
Jacob J. Modla
N.C Bar. ID No: 17534
JAKE MODLA LAW, PLLC
454 South Anderson Rd.
Suite 303
Rock Hill, SC 29730
T: 803-328-0898
E-Mail: jm@jakemodlalaw.com

ATTORNEY FOR PLAINTIFF
JIM WHITTUM

December 20, 2018